# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| EMMANUEL EDOKOBI,<br><br>Plaintiff,<br><br>v.<br><br>U.S. GENERAL SERVICES ADMINISTRATION, *et al.*,<br><br>Defendants. | Civil Action No. TDC-17-2469 |
| EMMANUEL EDOKOBI,<br><br>Plaintiff,<br><br>v.<br><br>COAKLEY REALTY MANAGEMENT, *et al.*,<br><br>Defendants. | Civil Action No. TDC-17-2825 |
| EMMANUEL EDOKOBI,<br><br>Plaintiff,<br><br>v.<br><br>VERIZON MARYLAND, INC., *et al.*,<br><br>Defendants. | Civil Action No. TDC-18-0557 |

## MEMORANDUM OPINION

Plaintiff Emmanuel Edokobi has filed suit against 22 individual and organizational defendants including the United States General Services Administration ("GSA"), the United

States Department of Health and Human Services, Office of Inspector General ("HHS-OIG"), and seven federal officials (collectively, "the Federal Defendants"); the Maryland Department of General Services and one Maryland state official; the Prince George's County, Maryland Government, the Prince George's County Department of Housing and Community Development, the Prince George's County Department of Permitting, Inspections and Enforcement, and three Prince George's County officials; Rory Coakley, Donnie Baxter, and Coakley Realty Management, LLC; Verizon Maryland, LLC; and three other individuals.

Edokobi alleges 45 separate causes of action against Defendants, including violations of Edokobi's rights under the First, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution; violations of comparable rights under the Maryland Constitution; "Conspiracy with Prejudice and Malice to Ruin Plaintiff's Life" and other claims of conspiracy; defamation and various other common law torts; and claims of aiding and abetting.

Pending before the Court is Defendants' Consolidated Motion to Dismiss on Limitation Grounds Only. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion to Dismiss is granted.

## BACKGROUND

### I. Factual History

In 2008, Edokobi was the president of a charitable organization known as the United Support Foundation ("USF") which provided computer training classes and other services in Maryland. On October 14, 2008, Defendant Ronald Dawkins, then a Special Agent with GSA Office of the Inspector General ("GSA-OIG") filed an affidavit ("the Dawkins Affidavit") in the United States District Court for the District of Maryland requesting a search warrant for

Edokobi's residence at 2005 Stratton Drive, Potomac, Maryland ("the Property") to uncover evidence related to the crimes of conspiracy to defraud the United States, 18 U.S.C. § 371 (2012), theft of government property, 18 U.S.C. § 641, tax evasion, 26 U.S.C. § 7201 (2012), and fraud and false statements, 26 U.S.C. § 7206. SA Dawkins alleged that Edokobi used the USF to receive donations of surplus computers from the federal government and sell them for a profit, in violation of regulations that governed a federal computer donation program. United States Magistrate Judge William G. Connelly authorized the search warrant that same day. The Court's electronic case management system assigned the search warrant an "mj," or Magistrate Judge, case number, 08-mj-3379-WGC, in order to consolidate and track filings related to the application for and execution of the search warrant. *See* Federal Judicial Center, *Sealed Cases in Federal Courts* 2 (Oct. 23, 2009), *available at*: http://www.uscourts.gov/ sites/default/files/ sealed-cases.pdf.[1] Although it is not referenced in Edokobi's Amended Complaint, the case management system assigned a separate number to track filings related to the application and execution of a search warrant for the USF facility as well: 08-mj-3380-WGC.

Two days later, on October 16, 2008, government agents executed the search warrant at the Property, seizing various computer equipment, paper records, and identity documents. *See* Search Warrant Return, *USA v. 2005 Stratton Drive, Potomac, Maryland 20854*, No. 08-mj-3379-WGC ("the Search Warrant Case") (D. Md. Oct. 21, 2008) (ECF No. 5).[2] There is no evidence that following this search, SA Dawkins or any other law enforcement agent took any action relating to the investigation. There were no further searches of the Property or USF facilities, and no criminal charges were filed against Edokobi or USF.

---

[1] The Court takes judicial notice of this report. Fed. R. Evid. 201(b)(2); *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (stating that a court may take judicial notice of matters of public record.)

[2] The Court takes judicial notice of the public filings in the Search Warrant Case.

According to Edokobi, the execution of the search warrant and subsequent failure to file criminal charges against him had a severely negative impact on several aspects of his life. He lives in "constant fear and uncertainty," has been unable to obtain a job in his "fields of training and specialization," and cannot obtain a "Public Trust Security Clearance," all as an alleged result of the "non-prosecution of the criminal case." Am. Compl. ¶¶ 69, 74, 87, ECF No. 68. Since 2008, Edokobi has been unwilling to travel outside of the United States for "fear of being declared a wanted person by Defendants." *Id.* ¶ 73. The latest injury that Edokobi attributes to the 2008 search of the Property and the failure to terminate the Search Warrant Case occurred on October 14, 2015, when his vehicle was rear-ended in a traffic accident, resulting in an injury to his left hand. According to Edokobi, the accident was a "direct result" of the non-prosecution of the Search Warrant case because if he had been able to obtain a job in his desired field, he would not have been forced to accept a "driving around job" and would therefore not have been driving a vehicle on October 14, 2015, when he was injured. *Id.* ¶¶ 103-113.

Edokobi also claims that Defendants have "made it impossible for [him] to complete a loan modification application on [his] home mortgage" since 2010. *Id.* ¶ 129. In support of this claim, Edokobi attached a copy of a letter written in support of his loan modification application on November 23, 2010 ("the Hardship Letter"). In the Hardship Letter, Edokobi disputed the assertion in the Dawkins Affidavit that there was probable cause to search the Property, denied that USF had engaged in any wrongdoing, and asserted that the law enforcement agents "had to tell outright lies" and engage in "the manufacture of bogus and self-incriminating affidavits" in order to secure the warrant. Hardship Letter at 1-2, 6, Am. Compl. Ex. 5, ECF No. 68-5. Edokobi included with the Hardship Letter a copy of the search warrant and portions of the inventory of seized items that was submitted with the return of the search warrant.

Despite his repeated claims of persecution at the hands of Defendants, Edokobi presents no evidence in the Amended Complaint that any of the Federal Defendants, or any other Defendant, communicated or otherwise interacted with Edokobi after the 2008 search. In his Opposition to Defendants' Motion, Edokobi includes a letter from Charles Pine, the Director of Field Operations, Eastern Area, for the United States Internal Revenue Service-Criminal Investigation Division, which states that all documents seized from Edokobi's home were returned to his wife on May 1, 2012, and that Edokobi could arrange for the return of the computer and data storage equipment from HHS-OIG Special Agent Alex Hernandez. According to Edokobi, however, on May 20, 2012, his wife was told that the computers and data storage equipment in SA Hernandez's custody would not be returned because "they have not completed their criminal investigation." Opp'n Mot. Dismiss at 22-23, ECF No. 74. In October 2012, Edokobi sent letters to SA Hernandez and HHS Inspector General Defendant Daniel Levinson demanding the return of these items, but there is no evidence that either Defendant responded to these requests.

Meanwhile, the Dawkins Affidavit remained under seal. On September 9, 2016, Edokobi filed a "Motion Requesting the Court to Unseal USA (Plaintiff's) Affidavit in Support of Application for Search Warrant Filed in Docket Number Four of Defendant's Criminal Case Number 8:08-mj-03379-WGC and Criminal Case Number 8:08-mj-03380-WGC Pending in this Court since October 21, 2008." Mot. Unseal, the Search Warrant Case (ECF No. 7). In response, the Government filed a Motion to Unseal the Dawkins Affidavit, which was granted by the Court (DiGirolamo, M.J.) on September 23, 2016. Edokobi then proceeded to file voluminous motions in the Search Warrant Case requesting various forms of relief. One of these

motions, in which Edokobi sought to refute various statements in the Dawkins Affidavit, included briefs and exhibits totaling over 1,600 pages.

## II. Procedural History

On August 28, 2017, Edokobi filed the Complaint in Case No. TDC-17-2469 alleging 52 causes of action against 31 individual and organizational defendants. On September 22, 2017, Edokobi filed a second action, Case No. TDC-17-2825, alleging 46 causes of action against 19 individual and organizational defendants, including some of the same defendants named in the No. TDC-17-2469. The Court held a case management conference with the parties in both cases on January 10, 2018, during which the Court established a briefing schedule for various defense motions and directed the parties to file a Joint Status Report on the prospect of settlement in these cases. During that conference, when Edokobi stated that the only relief he was seeking was for the Search Warrant Case to be closed and for his property to be returned to him, counsel for the Federal Defendants offered to look into the Search Warrant Case and see if he could arrange for its closure and for the return any property remaining in government custody. On February 9, 2018, Edokobi filed a third action, in the Circuit Court for Montgomery County, Maryland, alleging 91 causes of action against 21 individual and organizational defendants, which was removed to this Court on February 23, 2018 ("No. TDC-18-0557").

The Federal Defendants moved to consolidate the three cases on February 26, 2018. Edokobi opposed that Motion by filing a 44-page memorandum in opposition to the motion and attaching nearly 300 pages of exhibits, as well as a copy of his 2011 book, *The F.B.I. Got It All Wrong*. On April 24, 2018, the Court consolidated the three cases. Noting that the complaints in the three cases consisted of over 1,200 pages of allegations and exhibits, the Court ordered

Edokobi to file a single Amended Complaint that consolidated all of his claims and allegations against all Defendants, which he filed on June 5, 2018.

On July 30, 2018, the Government requested that the Court close the Search Warrant Case, apparently in response to Edokobi's threats of further litigation if the case was not dismissed. Over Edokobi's opposition, the Court (Simms, M.J.) granted the request on August 10, 2018.

## DISCUSSION

Pursuant to the Court's April 24, 2018 Order, Defendants have filed a Joint Motion to Dismiss in which they argue that all of Edokobi's claims are barred by the statute of limitations because every claim arises out of the 2008 search of the Property, and Edokobi was either aware of the necessary facts to file his claims or was on inquiry notice of his claims for the purposes of the statute of limitations. Defendants also argue that Edokobi's "non-prosecution" claims are not viable under any circumstances, and even if they were, they should have been filed years ago after the Government's failure to bring charges became apparent. Finally, Defendants argue that Edokobi failed to allege any defamation claims within Maryland's statute of limitations.

### I. Legal Standard

Defendants' statute of limitations argument does not rely upon facts outside the Amended Complaint, so it is properly considered as the subject of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should

construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Edokobi's constitutional claims are brought under 42 U.S.C. § 1983 ("§ 1983"). Section 1983 does not contain its own statute of limitations, so courts must apply the statute of limitations from the most analogous state law cause of action. *Owens v. Balt. City State's Atty's Office*, 767 F.3d 379, 388 (4th Cir. 2014). Where the operative events in this case generally occurred in Maryland, the Court applies Maryland's three-year statute of limitations for civil actions to § 1983 claims. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101 (West 2011); *Owens*, 767 F.3d at 388. This three-year limitations period also applies to Edokobi's claims based on the Maryland Constitution and his tort claims other than defamation. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101. Edokobi's defamation claims are subject to a one-year statute of limitations. Md. Code Ann., Cts. & Jud. Proc. § 5-105 ("§ 5-105"); *Higginbotham v. Pub. Serv. Comm'n of Md.*, 985 A.2d 1183, 1192 (Md. 2009) (stating that § 5-105 applies to defamation actions). For Edokobi's claim relating to a traffic accident that occurred in Washington, D.C., a three-year statute of limitations applies. *See* D.C. Code Ann. § 12-301 (West 2015); *Johnson v. Paragon Sys., Inc.*, 305 F. Supp. 3d 139, 145 (D.D.C. 2018) (stating that § 1983 claims are subject to a three-year statute of limitations under D.C. law).

Although state law provides the limitations period for Edokobi's claims, federal law controls when those claims accrue. *Nasim v. Warden, Md. House of Correction*, 64 F.3d 951,

8

955 (4th Cir. 1995). Under federal law, "a cause of action accrues when the plaintiff possesses sufficient facts about the harm done . . . that reasonable inquiry will reveal his cause of action." *Id.* Under this standard, the cause of action accrues when the plaintiff has actual knowledge of his claim or when he is put on notice, such as by the knowledge of the fact of injury and who caused it, such that the plaintiff could "make reasonable inquiry and that inquiry would reveal the existence of a colorable claim." *Id.*

## II.  Non-Prosecution

The vast majority of the claims asserted by Edokobi in the Amended Complaint allege a constitutional or state law cause of action arising from the Government's failure to prosecute Edokobi promptly for crimes relating to the October 16, 2008 search of the Property. Among other theories, Edokobi asserts that the failure to prosecute him in a timely manner violated his Sixth Amendment right to a speedy trial and his Fifth Amendment rights to due process and equal protection of the law. He also alleges that the lack of timely prosecution caused him various forms of injury, including the inability to secure a loan modification, job, or security clearance; the inability to travel out of the United States; and "constant fear and uncertainty." Am. Compl. ¶ 87. He deems these injuries to be violations of his Eighth Amendment right against cruel and unusual punishment.

Although this non-prosecution theory has no known basis in the law, such that Edokobi's claims are likely frivolous, the Court will confine its analysis to the formal subject of the Motion, the statute of limitations defense. Based on the three-year statute of limitations, these causes of actions would be barred if they accrued before August 28, 2014. The Court finds that they are time-barred.

First, the Amended Complaint and attached exhibits do not describe any action by any Defendant after the October 16, 2008 search of the Property. Since Edokobi was present at the Property when it was searched and received a copy of the search warrant and the inventory from the search, he was aware of the Search Warrant Case at that time and the identity of some of the law enforcement agents involved in the search. Several of the non-prosecution claims, particularly Counts 28, 29, 32, 35, 38, and 39, appear to assert improprieties relating to the provision of information used to secure the search warrant. In *Lewis v. Clark*, 534 F. Supp. 714, 716-17 (D. Md. 1982), a plaintiff filed suit against police officers after they had admitted that they had planted heroin in her house during the execution of a search warrant six years before. *Id.* at 716. The court held that the suit was time-barred because at the time of the search, the plaintiff knew of and was aware of the operative facts underlying her claim, specifically, that she had been the subject of a search but was innocent of the drug charges. *Id.* "It is the awareness of the facts giving rise to the cause of action, and not the awareness that the illegality of the action is conclusively provable that begins the running of the statute of limitations." *Id.* Thus, even though Edokobi did not necessarily know that he could prove the improprieties with the search warrant, where he was aware of the search and, from the outset, claimed that the search was unjustified, his causes of action relating to the unlawful search accrued when he received notice of the search. *See id.*; *Triestman v. Probst*, 897 F. Supp. 48, 50 (N.D.N.Y. 1995) (holding that claims challenging a search based on alleged false statements in the warrant accrue when the search was executed, not when the facts contained in the affidavit were made known to the plaintiff); *Shannon v. Recording Indus. Ass'n of Am.*, 661 F. Supp. 205, 210 (S.D. Ohio 1987) (same); *see also Slaey v. Adams*, No. 1:08-cv-354, 2008 WL 5377937, at *9 (E.D. Va. Dec. 23, 2008) (finding that a *Bivens* action for a Fourth Amendment violation based on an allegedly

unreasonable search and seizure was time-barred because the plaintiff was on inquiry notice of her injuries when she received a copy of the search warrant).

Second, to the extent that Edokobi's claims challenge not the underlying basis for the search, but his "non-prosecution" for offenses related to the Search Warrant Case, such claims also accrued more than three years ago. By the date of the search, October 16, 2008, Edokobi was on notice of his "non-prosecution"—that he was likely the subject of an investigation but had not yet been prosecuted—and knew the identity of at least some of the federal agents involved. As for the injury, although the Amended Complaint does not explicitly identify the specific dates he was harmed by his non-prosecution, Edokobi attached the Hardship Letter to the Amended Complaint as proof that Edokobi's non-prosecution prevented him from securing a loan modification. In the Hardship Letter, Edokobi challenged the probable cause finding underlying the 2008 search warrant and attached copies of the warrant and the inventory list in order to allay concerns about the investigation that could prevent him from securing a loan modification. The fact that Edokobi considered it necessary to explain the Search Warrant Case as part of the loan modification process establishes that he was then on notice of potential claims of injury arising from the continuing non-prosecution of the Search Warrant Case. Moreover, in the Hardship Letter, Edokobi specifically stated that as a result of the search "I have not been able to secure a job" because he could not present an identification card seized during the search. Hardship Letter at 5. Thus, by November 23, 2010, the date of the Hardship Letter, Edokobi was aware that his non-prosecution had caused him injury, such that his non-prosecution claims had accrued.

Whether Edokobi, at that point, had linked all of his other alleged injuries to his non-prosecution does not excuse his failure to file within three years. The statute of limitations

begins to run when "the plaintiff has, or ought to have, answers to two questions: Am I injured? Who injured me?" *Childers Oil Co., Inc. v. Exxon Corp.*, 960 F.2d 1265, 1271 (4th Cir. 1992). "[O]ne who knows that an injurious tort has been committed against him may not delay the filing of [a] suit until the time, however long, when [the individual] learns the precise extent of the damage resulting from the tort." *Portis v. United States*, 483 F.2d 670, 672 (4th Cir. 1973), *overruled on other grounds*, *United States v. Kubrick*, 444 U.S. 111 (1979). In *Nasim*, the United States Court of Appeals for the Fourth Circuit upheld the dismissal as time-barred of a prisoner's § 1983 claim of injury from asbestos in his prison cell because the prisoner knew when asbestos had been dumped in his cell in 1989, was aware that it could be harmful, and had complained about the asbestos at that time, but he did not file his claim for four years after that date. *Nasim*, 64 F.3d at 955-56. The fact that the plaintiff did not necessarily know that asbestos was linked to certain injuries such as stroke, eye disease, and skin disease did not excuse him from filing within three years of determining that he had been injured in some way by the asbestos. *See id.* Thus, as of November 23, 2010, Edokobi was on inquiry notice of his non-prosecution claims and had to file them within three years.

In any event, all of Edokobi's other alleged injuries occurred more than three years before the filing of his original Complaint. While Edokobi has also claimed that his non-prosecution caused injuries in the form of his inability to obtain a job or a security clearance necessary to obtain a job, he has acknowledged that the incidents in which he was offered positions but lost those opportunities due to his inability to obtain a security clearance occurred in January and November 2013, more than three years prior to the filing of his original Complaint. Opp'n Mot. Dismiss at 23. Edokobi's further claim that his injury in an October 14, 2015 auto accident was a "direct result of Defendants' non-prosecution of this criminal case"

12

because it occurred while he was working as a driver rather than in a job in his field of specialization, Am. Compl. ¶ 104, is merely an assertion of more extensive damages arising from his claim that non-prosecution caused him to lose job opportunities, which accrued no later than 2013.[3]

The alleged harms of being unable to travel outside the United States and Edokobi's "constant fear and uncertainty," Am. Compl. ¶ 87, necessarily occurred prior to October 16, 2013, five years after the search. Because federal crimes have a statute of limitations of five years, 18 U.S.C. § 3282(a), the "non-prosecution" of Edokobi—the period during which there was uncertainty whether he would be prosecuted for crimes under investigation at the time of the search warrant—ended on that date. Thus, even though Edokobi did not identify the specific dates that he failed to travel outside the United States or suffered general anxiety arising from the uncertainty of whether he would prosecuted, the only viable "non-prosecution" claims relating to such harms would arise from injuries that occurred before that date. After that point, there could be no plausible claim that there was any ongoing uncertainty whether Edokobi would be prosecuted that could have caused an injury to him. For the same reason, the alleged abstract injuries of failing to receive a speedy trial under the Sixth Amendment or having suffered violations of due process or equal protection of the law necessarily occurred by the end of this five-year statute of limitations period, when it became abundantly clear that Edokobi would not be prosecuted.

---

[3] In any event, this claim is especially frivolous because causation cannot plausibly be established, as there is no basis to find that the search warrant and related criminal investigation initiated seven years before the car accident was the "act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produce[d]" the auto accident. *Wolf v. Fauquier Cty. Bd. of Supervisors*, 555 F.3d 311, 321 (4th Cir. 2009).

Finally, it was not necessary for Edokobi to be specifically aware of the role of Defendants other than the Federal Defendants in order for his non-prosecution claims to accrue. Edokobi's claims accrued in 2010, when he first perceived that he was injured by his non-prosecution by the Federal Defendants, even if he did not yet know that other Defendants were arguably responsible. *See Berkley v. American Cyanamid Co.*, 799 F.2d 995, 998-99 (5th Cir. 1986) (holding that a plaintiff's claim accrued in 1977 when he learned that he had been injured by chemical exposure, such that a 1982 claim against the plaintiff's employer was time-barred even though the plaintiff first discovered in 1982 that the employer had been aware that the chemical exposure was hazardous); *Timberlake v. A.H. Robins Co., Inc.*, 727 F.2d 1363, 1365-66 (5th Cir. 1984) (holding that a plaintiff's claim accrued in 1978 when she learned that she been injured by an intrauterine device, such that her 1981 claim against the manufacturer was time-barred even though she did not learn of the manufacturer's alleged wrongdoing until 1981). At that point, he had a duty to inquire further whether he had specific claims against specific Defendants.

For these reasons, the Court finds that the non-prosecution claims, Counts 1-22, 24-25, and 28-40, are time-barred.

### III. Defamation

Edokobi alleges defamation in Counts 23, 26-27, and 41-45 of the Amended Complaint based on statements made in or referenced in the Dawkins Affidavit. These statements were therefore made on or before October 14, 2008, the date the Dawkins Affidavit was signed, well over one year before Edokobi's original Complaints in the three pending cases were filed on August 28, 2017 or later. Nevertheless, Edokobi asserts that he first became aware of the specific statements upon the unsealing of the Dawkins Affidavit on September 23, 2016, within

one year of the filing of the original Complaints in TDC-17-2469 and TDC-17-2825, but more than one year before the filing of the original Complaint in TDC-18-0557. The only defamation claims asserted in TDC-17-2469 or TDC-17-2825, and thus within one year of the unsealing of the Dawkins Affidavit, were claims against Defendants Dawkins, Horne, Levinson, Cherry, Owens, Hernandez, Parker, Stamler, and Okoronkwo. All defamations claims against any other Defendants, including Count 23, are therefore time-barred.

In the original Complaints, Edokobi acknowledged that he became aware in 2007 that Stamler had made false statements about him, *see* TDC-2469 Compl. ¶¶ 211-213, and he learned in 2011 that Parker had made false statements, *see id.* ¶¶ 204-206. To the extent that these are the same false statements alleged in the Amended Complaint, he was thus aware of them many years ago, such that the defamation claims against these Defendants must be dismissed as time-barred. Alternatively, if these assertions in the original Complaints relate to different alleged false statements, then the defamation claims against these Defendants in the Amended Complaint must be dismissed as time-barred because they were not first raised within one year of the unsealing of the Dawkins Affidavit. Thus, Counts 26-27 and the defamation claims against Parker in Counts 41-45 are time-barred.

As for the remaining defamation claims, the Court finds that Edokobi was on inquiry notice of them no later than November 2010. In the Hardship Letter, Edokobi specifically asserted that "FBI agents have told outright lies that are included in their bogus and self-incriminating sworn affidavit" and that "FBI agents had had to tell outright lies, including the manufacture of bogus and self-incriminating affidavits." Hardship Letter at 3-4. Thus, as of November 23, 2010, Edokobi was already on notice that there were false statements about him in the Dawkins Affidavit and had a duty to inquire further. Rather than wait until 2016 to file a

15

motion to unseal the Dawkins Affidavit, which actually resulted in its disclosure, he should have sought access to the Dawkins Affidavit, or additional information about the false statements, beginning no later than November 2010. Although it is not clear that the Dawkins Affidavit would have been unsealed immediately, there is no reason that it needed to remain so after October 2013, when the five-year statute of limitations on any charges arising from the search would have expired. *See* 18 U.S.C. § 3282. Thus, Edokobi's remaining defamation claims in Counts 41-45 are time-barred.

## IV. Tolling Arguments

Edokobi makes three arguments as to why even though his claims are time-barred, they should not be dismissed. First, he argues that "there can be no statute of limitations on an ongoing criminal case," essentially arguing that the Government's decision not to prosecute him criminally represents a continuing injury to him. Opp'n Mot. Dismiss at 7-11. As discussed above, the five-year statute of limitations on federal criminal cases was applicable to any crimes that may have arisen from the federal investigation that resulted in the search of the Property. 18 U.S.C. § 3282(a). Where there was no possibility that Edokobi could be prosecuted for such crimes after October 16, 2013, there can be no claim that he continues to be harmed in a way that extends the statute of limitations.

Second, Edokobi claims that the statute of limitations should be equitably tolled because he made diligent efforts to resolve his claims without filing a lawsuit, primarily by sending to senior government officials unsolicited letters and copies of his 404-page book criticizing the search, *The F.B.I. Got it All Wrong*, which was printed in 2011. *See* Emmanuel Edokobi, *The F.B.I. Got it All Wrong* 76-79 (2011), ECF No. 50-12. The Court disagrees. These efforts are not the "extraordinary circumstances beyond [Edokobi's] control [which] made it impossible to

file the claims on time" that would justify equitable tolling. *Chao v. Va. Dep't of Transp.*, 291 F.3d 276, 283 (4th Cir. 2002). Rather, they appear to be ill-advised efforts to seek relief without filing a lawsuit and thus provide no grounds for excusing a failure to file a complaint within the limitations period.

Finally, Edokobi's reliance on various statutes as grounds for tolling of the statute of limitations is misplaced. As discussed above, 18 U.S.C. § 3282 applies to the prosecution of crimes by the federal government, not the filing of civil claims by a private individual. 18 U.S.C. § 3282(a). Likewise, 28 U.S.C. § 1367 applies to the temporary tolling of the statute of limitations for state law claims which were timely filed in federal court pursuant to supplemental jurisdiction but were later dismissed, a situation not applicable here. 28 U.S.C. § 1367(d). Accordingly, the Court finds that all 45 of Edokobi's claims must be dismissed as time-barred. The Motion will therefore be granted as to all counts.

In the end, these cases arose from a fundamental misunderstanding of our justice system. Edokobi, like any other person, is entitled to a presumption of innocence, under which an individual may not be deemed guilty "on the basis of suspicions that may arise from the fact of his arrest, indictment, or custody, or from other matters not introduced as proof at trial." *Bell v. Wolfish*, 441 U.S. 520, 533 (1979). The mere filing of an affidavit or the execution of a search warrant never branded Edokobi as a criminal, and he has been and remains innocent in the eyes of the law. Although Edokobi's most recent filing states that he "will continue to file legal actions against Defendants, until Defendants prosecute or terminate the Criminal Case against Plaintiff," Opp'n Mot. Dismiss at 20, now that the Court has closed the Search Warrant Case at the request of the Government, there is no further need or legal basis to file additional cases. Any new case arising from the same set of facts would be subject to dismissal. With that closure

and the completion of the five-year statute of limitations period during which any criminal charges arising from the Search Warrant Case would have to have been filed, the Court hopes and expects that Edokobi will understand that he need not fear any adverse consequences and will be able to put this episode behind him.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED. A separate Order shall issue.

Date: September 26, 2018

/s/
THEODORE D. CHUANG
United States District Judge